UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JEREMY L. SCHLOSS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 11-CV-3337 |
| | ) | |
| FOREST ASHBY et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Forty plaintiffs detained in the Rushville Treatment and Detention Center ("Rushville") challenge alleged systemic failings in Rushville's administration. Plaintiffs seek leave to proceed in forma pauperis. For the reasons below, the Court dismisses Plaintiff's complaint for failure to state a claim, without prejudice to filing an amended complaint in accordance with this opinion.

LEGAL STANDARD

Plaintiffs are not "prisoners" within the meaning of the Prisoner Litigation Reform Act because they have no current criminal charges filed against them and are not serving criminal sentences. See 28 U.S.C. § 1915(h); see also Kalinowski v. Bond, 358 F.3d 978 (7th Cir. 2004)(declining to consider whether a person held as sexually violent is a prisoner, but noting that "[a]pplying the PLRA's definition to such detainees may be difficult."); Page v. Torrey, 201 F.3d 1136, 1139 (9th Cir. 2000)(person detained as sexually violent under California law was not a "prisoner" under PLRA); West v. Macht, 986 F.Supp. 1141 (W.D. Wis. 1997)(person detained as sexually violent under Wisconsin law was not a "prisoner" under PLRA). Accordingly, the provisions of 28 U.S.C. § 1915A requiring a screening of the complaint do not apply.

However, the "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." Brewster v. North

Am. Van Lines, Inc., 461 F.2d 649, 651 (7th Cir. 1972).  Additionally, a court must dismiss cases proceeding in forma pauperis "at any time if the court determines that the action fails to state a claim." 28 U.S.C. § 1915(e)(1).  Accordingly, this Court grants leave to proceed in forma pauperis only if the complaint states a federal claim.  A hearing was scheduled to assist in this review, but the hearing has been cancelled as unnecessary.

To state a claim, the allegations must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual allegations must give enough detail to give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)(add'l citation omitted).  The factual "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" Id., quoting Bell Atlantic, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic, 550 U.S. at 555-56.  However, pro se pleadings are liberally construed when applying this standard.  Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

ALLEGATIONS

Plaintiffs are detained in Rushville pursuant to the Illinois Sexually Violent Persons Act.  Their complaint is lengthy but can be distilled into a few recurrent themes.

Plaintiffs allege that Defendants are required to adhere to the entire Title 59 of the Illinois Administrative Code governing mental health, not just part 299 of Chapter 1, which specifically applies to sexually violent persons.  59 Ill.Admin.Code §§ 299.100-350.  Defendants are allegedly violating Title 59 in many ways, including the failure to give adequate notice of rules, the adoption of prison-like

policies, the failure to adequately monitor residents, the failure to provide rehabilitative treatment, the segregation of residents who consent to treatment from those who do not, the failure to provide a meaningful grievance process, and the implementation of restrictions on resident movement and interactions.

For example, the allegations include the banning of gaming consoles for irrational reasons and a ban on access to the outside patios. Additionally, the waiting list to obtain sex-offender treatment is allegedly six months to one year long, and residents are allegedly not allowed to participate in other groups such as the health care fitness group unless they are in treatment. Further, the rehabilitative treatment that is provided is allegedly based on "outdated and incorrect diagnostic tools."

Plaintiffs appear to assert that these conditions violate not only Title 59 but also their equal protection right to be treated just like any other mentally ill patient who is confined in a state mental health facility. They also challenge these conditions on due process grounds.

Additionally, Plaintiffs allege routine retaliation for attempting to

use the grievance process. Plaintiffs further allege that Defendant Durant reads their legal pleadings and then denies them copies of those pleadings, depriving Plaintiffs of their right of access to the court and retaliating against them for their attempts to pursue legal actions.

ANALYSIS

A violation of state law is not, by itself, a violation of federal law. Guarjardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010)("[A] violation of state law is not a ground for a federal civil rights suit."). A federal court is not an enforcer of state laws and regulations. Accordingly, Plaintiffs state no federal claim to the extent they allege that Defendants are violating the spirit or text of Title 59 of the Illinois Administrative Code.

As to the equal protection claim, Plaintiffs are not similarly situated to persons confined for treatment in other state mental health facilities. Plaintiffs are in Rushville because they have been "convicted of a sexually violent offense, . . .[and are] dangerous because [they] . . . suffer[] from a mental disorder that makes it substantially probable that .

. . [they] will engage in acts of sexual violence." 725 ILCS 207/5(f). Persons confined in other state mental health facilities may also be dangerous to themselves or others, but they do not fit the statutory definition for sexually violent persons. If they did, they would be in Rushville. See Thielman v. Leean, 282 F.3d 478, 483 (7th Cir. 2002)("facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high."). In short, there is no equal protection claim because Plaintiffs are not similarly situated to mentally ill persons held in other mental facilities. Additionally, Plaintiffs' alleged differential treatment is rationally related to the fact that they are confined as sexually violent persons.[1] See Thielman, 282 F.3d at 485 (upholding restraints used on sexually violent persons during transport and not on other mentally ill patients: "[I]t is not unreasonable for the State to believe that a person with a

---

[1] Plaintiffs do not explain how the state's other mental health facilities are different from Rushville, but they appear to imply that other facilities allow the residents more freedom.

mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who nonetheless threatens danger to himself or others.").

For the same reasons, there is no equal protection violation in segregating residents who consent to treatment from those who do not. They are not similarly situated, and, even if they are, separation is rationally related to a legitimate interest in enabling residents undergoing treatment to support each other in their treatment goals while avoiding possible negative influences from those who refuse treatment. Judge Baker recently discussed this separation in Lane v. Phillips, 07-3332 (C.D. Ill., 9/19/11 order, d/e 116), finding no constitutional violation. In that order, Judge Baker affirmed his earlier ruling that such separation is "rationally related to legitimate governmental objectives of security and rehabilitation." Id. at p. 6. He further found that the separation did not implicate a resident's rehabilitation or treatment. Id. at pp. 9-10. A copy of Judge Baker's order is attached. This Court agrees with his conclusions.

Plaintiffs' allegations regarding denial of access to the court also do not state a claim. An access to the courts claim arises only when a plaintiff suffers an "actual injury" from the inability to pursue a nonfrivolous claim. Lewis v. Casey, 518 U.S. 343, 351 (1996); May v. Sheahan, 226 F.3d 876, 883 (7th Cir. 2000). Denial of copies of unidentified legal pleadings does not, by itself, state an access claim. Further, Plaintiffs identify no legal action in which they suffered any prejudice by their inability to make copies. And, unless there is a systemic denial of access to the court, the joinder of 40 unrelated access claims would not be proper in one lawsuit. See Fed. R. Civ. P. 20 (plaintiffs may join in one action if their claims arise out of same occurrences or share common questions of law or fact).

Similarly, Plaintiffs' allegations about retaliation for using the grievance procedure or litigating cases is too vague. No Plaintiff identifies specifically what protected First Amendment right he exercised and when, or the specific retaliation he suffered. And, as with the access to court claim, joinder of 40 different retaliation claims based on

unrelated incidents would not be properly joined in one lawsuit.

The same conclusion is reached with the allegations that Defendants fail to give notice of their rules. "Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation." Forbes v. Trigg, 976 F.2d 308, 314 (7th Cir. 1992). However, no plausible inference arises that any Plaintiff was sanctioned for violating an undisclosed rule. There is no federal law against changing the rules of the facility to meet the facility's changing needs. Forty unrelated claims on this issue would not be properly joined in any event.

The "failure to monitor" claim is just as vague. No Plaintiff identifies any instance wherein the alleged failure to monitor resulted in any injury to him. Plaintiffs may be correct that increased on-site monitoring by security guards would improve Plaintiffs' quality of life, but that does not make out a constitutional claim. To make out a failure-to-protect claim, a plausible inference must arise that Defendant ignored a substantial risk of serious harm to Plaintiff, causing injury to them. Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005)(applying

Eighth Amendment standard to failure-to-protect claim by person detained under Sexually Violent Act).

As to the alleged lack of a meaningful grievance procedure, Plaintiffs have no federal constitutional right to a grievance procedure. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)("a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). If Plaintiffs are alleging that the lack of a meaningful grievance procedure violates the Illinois Administrative Code, that alone does not make out a federal claim.

Plaintiffs are constitutionally entitled to be treated humanely and to the exercise of professional judgment. Youngberg v. Romeo, 457 U.S. 307, 321 (1982)(persons involuntarily committed entitled to exercise of professional judgment); Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008)(committed person is entitled to "'humane conditions'" and the provision of "'adequate food, clothing, shelter, and medical care'")(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Supreme Court in Youngberg also remarked that "[p]ersons who have

been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. at 322. However, a conditions of confinement claim still requires an objectively serious deprivation and deliberate indifference. <u>Sain</u>, 512 F.3d at 894 (peeling paint, foul odor, no air-conditioning, cockroach infestation and poor ventilation were not objectively serious enough to implicate constitution).

Plaintiffs' conclusory allegations that Rushville is run like a prison do not give rise to a plausible due process claim. As Judge Baker recently found in <u>Lane</u>, Rushville residents are free to move about their pod from morning to evening and have hour-long yard opportunities daily with the rest of the residents on their unit. See <u>Lane</u>, 07-3332 (C.D. Ill., 9/19/11 order at pp. 6-7, d/e 116).

Similarly, the Court discerns no claim regarding the ban on gaming consoles, to the extent Plaintiffs are trying to pursue such a claim. Humane treatment means the adequate provision of life's basic

necessities, not luxuries such as gaming consoles and other electronic equipment. See, e.g., Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995)(pretrial detainee had no constitutional right to television or cigarettes); Roberts v. Cohn, 63 F.Supp.2d 921, 924 (N.D. Ind. 1999)("It is well established that prison inmates do not have a constitutional right to use or possess typewriters and word processors.").

The only potential constitutional right implicated by the gaming console ban might be the First Amendment, in the sense that the consoles are the only means to view the "speech" in the video games. See Brown v. Entertainment Merchants Ass'n, 131 S.Ct 2729, 2733 (2011)("video games qualify for First Amendment protection"). Yet even if the First Amendment might be implicated, a viable First Amendment claim is not stated because the ban is reasonably related to the legitimate security concerns of the facility. See Turner v. Safley, 482 U.S. 78, 89 (1987)(setting forth legal standard for analyzing First Amendment claims by prisoners). The security concerns are set forth in the program director's memo attached to the complaint: "Advancements

in technology have lead to increased ability to obtain/store/trade contraband and/or engage in unauthorized communications and other deceptive practices. Such practices threaten the safety and security of the facility and the community and interfere with the facility's therapeutic purposes." (Ex. 1, attached to complaint).

Plaintiffs assert in their complaint that the gaming consoles are not capable of "do[ing] the thing this memo is banning them for," (complaint, p. 17), but Rushville administrators are not required to individually test each electronic device's capability. They need only articulate a "valid, rational connection" between the ban and the security concern, which the memo does. <u>Turner</u>, 482 U.S. at 89. As the memo states, the security concerns arise from the expanding ability of many different kinds of electronics to obtain, store, and communicate information. Striking down the ban would negatively impact guards' ability to discover contraband. As to the other <u>Turner</u> factors, Plaintiffs have alternative ways to exercise their First Amendment rights, such as by playing games that do not require a gaming console, while the facility

has no ready alternatives to avert the security problem posed by the electronics other than banning them.  See <u>Singer v. Raemisch</u>, 593 F.3d 529, 539 (7th Cir. 2010)(banning of fantasy role playing games was rationally related to legitimate penological interests and prisoner had alternative means of exercising right, such as possessing other reading materials or playing allowable games).

Though application of the <u>Turner</u> analysis is often premature at the motion to dismiss stage, see <u>Lindell v. Frank</u>, 377 F.3d 655, 657-58 (7th Cir. 2004), here the legitimate penological reasons for the rule are so obvious and well established that dismissal at the pleading stage is proper.  See <u>Williams v. Wisconsin</u>, 336 F.3d 576, 582 (7th Cir. 2003)(discussing <u>Turner</u> and affirming dismissal for failure to state a claim regarding parolee's travel restrictions and their incidental interference with his right to marry); <u>Belton v. Singer</u>, 2011 WL 2690595 *12 (D.N.J. 2011)(unpublished)(dismissing at pleading stage claim by sexually violent detainee challenging confiscation of gaming consoles and other electronics); <u>Hedgespeth v. Bartow</u>, 2010 WL

2990897 *7 (W.D. Wis. 2010)(unpublished)(on summary judgment, finding that rule banning possession of video games and gaming equipment by sexually violent detainee was rationally related to legitimate security interests).

In short, the Court cannot hypothesize a plausible scenario under which the Constitution would require Rushville to permit its residents to possess video gaming consoles. Such an order would ignore the substantial deference afforded the facility's administrators in making these kinds of decisions. See Beard v. Banks, 548 U.S. 521, 528 (2006)("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'")(quoted cite omitted).

The Court does see the possibility of one constitutional claim that might proceed if properly pled: a due process claim based on the alleged lack of rehabilitative treatment. However, it is not clear whether Plaintiffs are alleging that they are being denied participation in sex offender treatment because of the long waiting list. At one point in the complaint, Plaintiffs seem to allege that they have not consented to such

treatment. Additionally, what treatment each has sought or what the official response has been is not clear from the pleading. Also not clear is what control the named defendants may have over a resident's treatment.

Plaintiffs will be given an opportunity to file an amended complaint detailing the rehabilitative treatment claim. Specifically, each Plaintiff must state that he is eligible for sex offender treatment, has consented to that treatment, and has been denied that treatment. Each Plaintiff must also state what sex offender treatment he is receiving, if any, his attempts to obtain that treatment, and the responses he received, if any.

IT IS THEREFORE ORDERED:

1) Plaintiffs' complaint is dismissed without prejudice for failure to state a federal claim. Plaintiffs are directed to file an amended complaint in accordance with this opinion by October 31, 2011. Failure to do so will result in dismissal of this case without prejudice.

2) The clerk is directed to obtain trust fund ledgers for Plaintiffs

and to docket said ledgers. These ledgers will be used to determine each Plaintiff's partial payment, in the event their amended complaint states a federal claim.

ENTERED: October 11, 2011

FOR THE COURT:

          s/Sue E. Myerscough
         SUE E. MYERSCOUGH
      UNITED STATES DISTRICT JUDGE